Case Number 582638

# THE COURT OF COMMON PLEAS
# FRANKLIN COUNTY, OHIO
# PROBATE DIVISION

IN RE:

Estate of SUNI MUSIC          Case No: 582638
Estate of MYLEE MUSIC      Case No: 582639

## NOTICE OF APPEARANCE
## MEMORANDUM CONTRA EXCEPTIONS TO PARTIAL ACCOUNT

The undersigned hereby enters an appearance on behalf of Cynthia Noble a beneficiary of the above estates.

           **/s/Charles Bendig (0019934)**
           Charles H. Bendig, Esq. (#0019934)
           Attorney for Cynthia Noble

# Table of Contents

|  | Page |
|---|---|
| Notice and Caption | 1 |
| Statement of Facts | 3 |
| Argument | 6 |
| Conclusion | 13 |
| Certificate of Service | 15 |
| Exhibits | |
| Evidence Time of Death | A |
| Beneficiary Designation | B |
| Policy 1 Hartford Life Insurance Company | C |
| Policy 2 Hartford Life Insurance Company | D |

Case Number 582638

# Memorandum Contra
# Statement of facts

James Music, Suny Music, husband and wife, and Mylee Music, their daughter, were on interstate 270 on December 24, 2016.  An intoxicated driver came across the median strip causing a violent collision between the vehicles. Time of crash was 15:40.

James Music died almost instantly, he was pronounced dead at the hospital on arrival at 16:21.

Suni Music survived long enough for efforts to save her at the hospital. She was pronounced dead at the hospital at 17:05. The autopsy shows catheters, chest tubes, EKG pads; all showing the treatment she received at the hospital.

Mylee Music lived for approximately 12 hours and was pronounced dead at the hospital at 03:02, Christmas day, 12.25.2016, after efforts to revive her.

James Music, other than his surviving wife and surviving daughter, had two surviving parents, Joyce Music and Ernest (Bud) Music, and a brother Dallas Music.

Suni Music, other than her surviving daughter, had two surviving parents, Cynthia Noble and James Olson, a brother Chris Olson, and a sister Traci Clemens. After Suni's death, her father died, leaving a surviving Wife, Ellen Olson.

Mylee Music had no siblings, her parents predeceased her, she left four surviving grandparents, Cynthia Noble, James Olson, Joyce Music, and Ernest (Bud) Music.

Following tragic funerals, the surviving parents of Suni, and the surviving parents of James, agreed to hire one attorney to handle the wrongful death claims, Tim Van Eman. They also agreed to hire one attorney to handle the estates, Kacie Waugh. They also agreed to a single administrator for all three estates, Traci Clemens, the surviving sister of Suni Music.

The wrongful death actions were settled for $100,000 each. These were the combined limits for the insurance carrier for the deceased intoxicated defendant, and the underinsured motorist carrier for the family vehicle. The wrongful death settlements for the adults were distributed to each respective family separately.

The wife (Suni's) beneficiaries received something less on her death because of higher subrogated medical bills, approximately $64,000 net after subrogated medical bills, costs, and attorney fees.

The husband (James') beneficiaries received something more on his death because of lower subrogated medical bills, approximately $70,000 net after subrogated medical bills, costs, and attorney fees.

The daughter (Mylee's) net settlement ($69,197.22) was divided equally between the two families.

At the time of their deaths, there was a Life Insurance policy through Hartford Life Insurance, insuring all three decedents. The Hartford Life Insurance sent two contracts, for the same policy number, with the same contract language, only different page numbers.

The policy insured the life of James Music, and had a death beneficiary to his wife, Suni Music first beneficiary; and his daughter, Mylee Music alternate beneficiary. This policy paid $251,229.00 as benefits to the Suni Music estate.

Harford Life Insurance Company under its insurance contract determined that that wife "survived" the decedent, and under its interpretation of its policy, 100% of the proceeds were payable to the decedent wife's estate. (Hartford contract, Page 22, policy 1; page 31, policy 2). The contract states Hartford has full discretion and authority to determine eligibility, and construe and interpret all terms and provisions of the policy. (Hartford contract, Page 23, policy 1; page 32, policy 2).

The policy also insured the life of Suni Music and had no named death beneficiary. The policy also insured the life of Mylee Music and had no named death beneficiary. General policy language stated policies on dependents are payable to "you ", the employee James Music, if living. Otherwise, at Hartford's option, payable to either the surviving spouse, or the executor of "your", the employee James Music's estate. (Hartford contract, Page 22, policy 1; page 31,

policy 2). The policy paid $53,799.92 as benefits for the Suni Music death. The policy paid $10,008.92 as benefits for the Mylee Music death.

Harford Life Insurance Company under its insurance contract determined 100% of the proceeds for both the wife's and daughter's deaths were payable to the decedent husband's estate.

The administrator for all three estates has filed partial accounts placing Life Insurance proceeds in each of the accounts as determined by Hartford Life Insurance.

The family of James Music has filed exceptions to partial accounts in both the estate of Suni Music and the estate of Mylee Music, objecting to the death benefit of $251,229.00 in the Suni Music estate, arguing **ORC 2105.32** applies to this contract.

## Argument

The current version of **ORC 2105.32**, did not take effect until April of 2017. These deaths occurred in December of 2016, before the effective date of the new statute. The older version of **ORC 2105.32** applies in this case. This statute is called **The Uniform Simultaneous Death Act**.

The statute(s) in effect as of date of death reads as follows:

Case Number 582638

## **Chapter 2105. Descent and Distribution**

Sec. 2105.32. (A) Except as provided in section 2105.36 of the Revised Code, a person who is not established by clear and convincing evidence to have survived another specified person by one hundred twenty hours is deemed to have predeceased the other person for the following purposes:

(1) When the title to real or personal property or the devolution of real or personal property depends upon a person's survivorship of the death of another person;

(2) When the right to elect an interest in or exempt a surviving spouse's share of an intestate estate under section 2105.06 of the Revised Code depends upon a person's survivorship of the death of another person;

(3) When the right to elect an interest in or exempt an interest of the decedent in the mansion house pursuant to section 2106.10 of the Revised Code depends upon a person's survivorship of the death of another person;

(4) When the right to elect an interest in or exempt an allowance for support pursuant to section 2106.13 of the Revised Code depends upon a person's survivorship of the death of another person.

Sec. 2105.36. A person who is not established by clear and convincing evidence to have survived another specified person by one hundred twenty hours shall not be deemed to have predeceased the other person if any of the following apply:

(A) The governing instrument contains language dealing explicitly with simultaneous deaths or deaths in a common disaster, and that language is operative under the situation in question.

(B) The governing instrument expressly indicates that a person is not required to survive an event by any specified period in order for any right or interest governed by the instrument to properly vest or transfer.

(C) The governing instrument expressly requires the person to survive the event for a specified period in order for any right or interest governed by the instrument to properly vest or transfer, and the survival of the event by the person or survival of the event by the person for the specified period is established by clear and convincing evidence.

(D) The imposition of a one-hundred-twenty-hour requirement of the person's survival of the other specified person causes a nonvested property interest or a power of appointment to be invalid under section 2131.08 of the Revised Code, and the person's survival of the other specified person is established by clear and convincing evidence.

(E) The application of a one-hundred-twenty-hour requirement of survival to multiple governing instruments would result in an unintended failure or duplication of a disposition, and the person's survival of the other specified person is established by clear and convincing evidence.

**UNIFORM SIMULTANEOUS DEATH ACT**, 2002 Ohio Laws File 90 (H.B. 242).

Laws controlling simultaneous deaths have been in effect for many years. Ohio courts have routinely found Life Insurance contracts transfer death benefits at the moment of death to any then living beneficiary, and simultaneous death statutes have no application to Life Insurance death benefits.

One of the first Ohio probate laws dealing was simultaneous death was **Section 10503-18 General Code**, **PRESUMPTION OF ORDER OF DEATH**, enacted in 1932. This provision provided that when the surviving spouse dies within 3 days of the date of death of the decedent, or within 30 days after a common accident, the estate of the "first decedent shall pass and descend as though he had survived such heir at law or legatee".

The Franklin County Probate Court had to interpret and apply the statute in **In re Thatchers' Estates**, No. 68713, 1933 WL 979, at *5–6 (Ohio Prob. July 5, 1933). The husband died on April 13, 1933, and the wife died on April 16, 1933, within three days of his death. The Franklin County Probate Court properly found that since the wife died within three days of her husband, she did not have any

rights under her husband's estate, and the husband's niece would receive 100% of the deceased husband's estate. The deceased wife's three brothers would receive nothing from her deceased husband's estate.

However, the Franklin County Probate Court went on to find that as to Life Insurance benefits, they were controlled by contract, and not by this statute. **Therefore, 100% of the Life Insurance benefits payable as the result of the death of the husband became payable to the wife's estate immediately on his death.** Therefore, the wife's three brothers would receive 100% of the Life Insurance payable for the death of her husband. The Life Insurance contract did not have any specific language relating to simultaneous death, it simply required the designated beneficiary to be living at the time of the insured's death.

As to the insurance policies, it must be observed that they constitute a particular contract in which three parties have an interest viz: the insured, the company and the beneficiary. By the express terms of these policies, immediately upon the death of the insured, the policies mature and the rights of the designated beneficiary to the proceeds of the policies become fixed. There has been submitted to the court photostatic copies of the two policies with the Equitable Life Insurance Company of Iowa, on the life of Edward W. Thatcher, in which Jessie May Thatcher, the wife, is designated beneficiary thereof. One of these policies provides that the Company "promises to pay * * * to Jessie May Thatcher, wife, of the insured, * * * one thousand dollars, upon the legal surrender of this policy, and upon receipt at its said office, while this policy is in full force, of due proof of the death of Edward W. Thatcher, the insured." The other policy contains similar wording.

It must be borne in mind that insurance policies made payable to a designated beneficiary, upon the death of the insured, form no part of the estate of the insured, but vest immediately in the beneficiary and become part of his or her property. Since Section 10503-18, General Code, controls only the estate of a deceased

person, it has no application to the policies on the life of Edward W. Thatcher, since they vested immediately upon his death in his wife, Jessie May Thatcher, who survived him.

**6 The provision in the policy on the life of Edward W. Thatcher that "the interest of any beneficiary who dies before the insured shall vest in the insured, unless otherwise provided for by endorsement on this policy at the direction of the insured," contemplates that the beneficiary in actual point of time shall die before the insured, and does not contemplate any statutes, which for the purposes of descent and distribution of a decedent's estate, consider neither of two persons as having survived the other.

There is no question concerning the Metropolitan Life Insurance Policy on the life of Jessie May Thatcher, since it is the settled Life Insurance law that when the designated beneficiary, predeceases the insured, the policy becomes payable to the estate of the insured, unless the policy otherwise provides. **In re Thatchers' Estates**, No. 68713, 1933 WL 979, at *5–6 (Ohio Prob. July 5, 1933).

The Portage County Probate Court has also evaluated issues relating to Life Insurance, where the husband and wife died after a common automobile accident, where they were hit in a crosswalk as pedestrians. The evidence was clear that the husband died March 1, 1952, and the wife died March 21, 1952, within 30 days. The couple had no children; the husband's heirs were his siblings; the wife's heirs were her siblings.

The husband's estate wanted life insurance on his life, where his wife was the beneficiary, paid to the deceased husband's estate, as if his wife predeceased him. The Probate Court refused, citing the **Thatcher** case, and again finding that it is a well-established rule in Ohio that **The Simultaneous Death Act** did not apply to Life Insurance policies, which are particular contracts, controlled by that

contract.  Life Insurance policies made payable to a designated beneficiary on the death of insured, vest immediately in that beneficiary, and become part of his or her property.  The statute has no application to policies on the life of the deceased husband, since it vested on his death to his wife, who survived him.

'As to the insurance policies, it must be observed that they constitute a particular contract in which three parties have an interest, viz.: the insured, the Company and the beneficiary. By the express terms of these policies, immediately upon the death of the insured, the policies mature and the rights of the designated beneficiary to the proceeds of the policies become fixed. * * *

'It must be borne in mind that insurance policies made payable to a designated beneficiary, upon the death of the insured, form no part of the estate of the insured, but vest immediately in the beneficiaries and become part of his or her property. Since G. C. § 10503–18 controls only the estate of a deceased person, it has no application to the policies on the life of [the husband], since they vested immediately upon his death in his wife, * * * who survived him. * * *

'There is no question concerning * * * policy on the life of [the wife], since it is the settled life insurance law that when the designated beneficiary pre-deceases the insured, the policy becomes payable to the estate of the insured, unless the policy otherwise provides.'

Although the ownership of life insurance proceeds was not a direct question in the Thatcher case, the Court finds no instance where these principles have been questioned and accepts them as a correct statement of the law on this point. Accordingly, the proceeds of the life insurance policies belong to Mrs. Gilger's estate, under the law of contract, since actually she survived her husband. **In re Gilger's Estate**, 109 N.E.2d 333, 336 (Ohio Prob. 1952).

In a more recent case, the Probate Court was required to evaluate a husband and wife murdered, and found together, where there was absolutely no evidence which individual died first.  In that case, the Court applied the contract language of insurance policy, and found since the beneficiary could not prove she survived the

decedent, she would not be entitled to benefits under the contract. **The Simultaneous Death Act** was not applied, the contract language was interpreted.

The question before this Court being not one dealing with disposition of property belonging to estate as per Section 2105.21 of the Ohio Revised Code, but instead a right of an estate to claim property under a contract, the issue to be met squarely is whether Anka Dolence falls within the provisions of the terms of the policy as being a beneficiary under said terms. **Dolence v. Cent. Nat. Bank of Cleveland**, 15 Ohio Misc. 300, 306, 238 N.E.2d 849, 853 (Prob. 1968).

In this case, it is not disputed that James Music died before Suni Music by a measurable period of time. At the moment of the death of James, his Life Insurance contract passed all right, title, and interest to his death beneficiary, his then living wife.

When his wife and daughter died, under the same contract, his Life Insurance contract passed all right, title, and interest to their life insurance to his estate.

These determinations under the Life Insurance contract, are subject to appeal under the policy, but the Life Insurance Company retains full authority to interpret its policy language.

## **Conclusion**

Hartford Life Insurance Company properly determined that its contract required payment of the death benefit for the death of James Music to the estate of his then living wife Suni Music. When she died, those benefits were properly included in her estate.

Similarly, Hartford Life Insurance Company properly determined that its contract required payment for the deaths of Suni Music and Mylee Music, at the moment of those deaths, to the estate of the named employee James Music.

These determinations by Hartford Life Insurance Company are within its discretion under its policy. Although the policy provides for an appeal of these determinations, the administrator of the James Music estate has not filed any appeal of this determination. If the administrator were to file such an appeal, it would not be successful.

The provision of Ohio law cited by the beneficiaries of the James Music estate generally make provisions for the law of descent and distribution, the probate law relating to rights of heirs to estates.

All Ohio cases have routinely found Life Insurance benefits are controlled by contract, and are not subject to the provisions for allocation of rights to estates.

The beneficiaries of the James Music estate fail to cite any cases to support the position that Life Insurance benefits are controlled by **ORC 2105.32**. **The Simultaneous Death Act** does not apply to life insurance benefits which are controlled entirely by contract.

If there were a question about the sequence of death, the life insurance contract would still apply, only differently. However, in this case there is absolutely no question about the sequence of death.

Therefore, Hartford Life Insurance Company has correctly paid its benefits to the respective estates. The exceptions to partial account, filed against the estate of Suni Music should be denied.

    **/s/Charles Bendig (00199340**
Charles H. Bendig, Esq. (#0019934)
Attorney for Cynthia Noble

Case Number 582638

## **Certificate of service**

 The undersigned hereby certifies that on May 2, 2018, the above Notice and Memorandum Contra was served upon ALL PARTIES IN THESE PROCEEDINGS.

 Kacie Waugh
 Attorney for administrator

 Traci M. Clemens
 Administrator, Suni Music and Mylee Music estate

 Adriann S. McGee
 Attorney for beneficiaries of James Music estate.

         **/s/Charles Bendig (00199340**
         Charles H. Bendig, Esq. (#0019934)
         Attorney for Cynthia Noble